Glentz vs. The State.

## GLENTZ vs. THE STATE.

EXCISE LAW: EFFECT OF REPEALING STATUTE. (1) *Village annexed to town for general municipal purposes. Power to license in town supervisors.* (2, 3) *Statutory provision reënacted in repealing statute. Case stated.*

1. Ch. 184, P. & L. Laws of 1867, conferred certain powers (not including that of granting licenses) upon the trustees of the village of Princeton, but reannexed the territory of the village to the *town* of Princeton for general municipal purposes; and under that act the power to license the sale of spirituous liquors within the village was not vested in the trustees thereof, but in the town board, notwithstanding sec. 1, ch. 35, R. S., which declared that "the boards of supervisors of the several towns, and the aldermen of any incorporated city, and the *trustees of any incorporated village* within this state" may grant such licenses.

2. When a repealing statute reënacts a provision of the old statute in the same words, there is no change of the law.

3. Sec. 1, ch. 179, Laws of 1874, is a codification of the laws of this state relative to excise and the sale of intoxicating liquors, and its first section is the same as sec. 1, ch. 35, R. S., except some immaterial verbal changes. *Held*, that it did not have the effect to deprive the town board of the town of Princeton of the power to license the sale of liquors within the village of Princeton, nor to confer that power on the trustees of the village.

ERROR to the Circuit Court for *Green Lake* County.

The plaintiff in error, upon certain stipulated facts, under the direction of the court, was found guilty of selling intoxicating liquors within the limits of the village of Princeton, without a license. It appears from the facts stipulated, that he had never obtained a license from the trustees of the *village*, but that he held one granted by the supervisors of the *town* of Princeton. The court having rendered judgment against him on the verdict, he brought the case here by writ of error.

*Taylor & Sutherland*, for plaintiff in error:

Sec. 1 of ch. 129, Laws of 1874 (the "Vogel Law"), which declares that "the board of trustees of any incorporated village may grant license," etc., is the same as sec. 1, ch. 35, R. S., with

the exception of the amount of the license fee.   So secs. 2–15,
and sec. 18, are taken bodily from ch. 35, R. S., with a few im-
material variations.   As to these provisions the old statute
must be considered as having continued in force ever since its
first enactment.   *Ely v. Holton,* 15 N. Y., 595 ; *Moore v. Man-
sert,* 49 id., 335 ; 2 Caines' Cas., 151 ; *Douglass v. Howland,* 24
Wend., 45–47 ; 20 Johns., 722 ; 7 Barb., 191 ; 3 Wis., 667 ;
20 id.,  634 ; 1 Kent's Com. (11th ed.), 466, and cases there
cited.   Before ch. 35 was codified in the " Vogel Law," it is
admitted that the village of Princeton did not have the right to
license ; and the mere codification of the law, without any
change in the provision named, did not confer on the village
new powers and rights.   *Walworth Co. v. Village of Whitewater,*
17 Wis., 195 ; *Janesville v. Markoe,* 18 id., 350 ; *In re Comm'rs
of Central Park,* 50 N. Y., 493 ; *Mitchell v. Halsey,* 15 Wend.,
241 ; *Tracy v. Goodwin,* 5 Allen, 409 ; *Brown v. Lowell,* 8 Met.,
172 ; *State v. Mills,* 34 N. J. Law, 177 ; *Ellis v. Batts,* 26 Texas,
703.   Counsel distinguished *Kellogg v. Oshkosh,* 14 Wis., 623,
and *Brightman v. Kirner,* 22 id., 54, from the case at bar, con-
tending that in each of those cases the general law which was
held to repeal special provisions of charters, was a *new* provision,
clearly designed to establish a new and uniform rule for the
whole state.   2. The law of 1874 provides that town boards
may grant licenses within the limits of their respective towns ;
and under the peculiar provisions of the charter of the village
of Princeton, the village territory is within the limits of the
town of Princeton, as that phrase is used in the law, *i. e.,* in the
territory controlled by the town authorities " for general muni-
cipal purposes," including the granting of licenses.   3. Sec. 18
of the act of 1874 (sec. 16, ch. 35, R. S.) provides that all
moneys derived from licenses shall be applied to pauper ex-
penses.   By the stipulation in this case it appears that the town
system of caring for the poor prevails in Green Lake county,
and that the town of Princeton provides for the poor of both
the town and village.   If the village should grant the license,

and the money should go into its treasury, a plain provision of the act of 1874 would be violated.

*The Attorney General*, for the state :

Sec. 1, ch. 179 of 1874, confers upon " the board of trustees of any incorporated village within this state " the power to grant licenses for the sale of intoxicating liquors within the limits of such village.   And the village of Princeton is an " incorporated village."   Sec. 1, ch. 184, P. & L. Laws of 1867 (which is the present charter of said village), declares that the territory therein described " shall hereafter be known and designated as the village of Princeton, and the inhabitants residing or who may hereafter reside within the said boundaries, are hereby constituted *a body corporate and politic* by the name," etc.   The same section clothes them with the usual powers, characteristics and functions of a corporation.   True, sec. 25 of this act reannexed· the territory of said village to the town of Princeton " for general municipal purposes."   But, 1. It is not entirely clear that this conferred upon the town supervisors, even at that time, authority to grant licenses within said village ; because that is not the exercise of a general municipal power. It is not one of the general municipal-purposes for which towns are organized, not being mentioned in ch. 15, R. S., which provides for the organization of towns in this state, and prescribes their powers, officers, etc.   2. The act of 1874, being subsequent to such reannexing act, repeals the clause just mentioned, if inconsistent with it ; for sec. 22 of the act of 1874 expressly repeals all laws inconsistent with its provisions.   That it was the *intention* of the legislature, as well as the legal consequence of the passage of the act, that village and city charters should be modified by it, is shown by the second *proviso* of sec. 23, which declares that " sections one and two of this act, *so far as they fix the term* for which any license shall be granted, shall not in any way interfere with or change the provisions of any village or city charter *in that behalf*," etc.   *Moore v. S. & S. R. R. Co.*, 34 Wis., 173.   In answer to the argument derived from the pro-

visions of sec. 18 relative to the disposal of the license money, it may be said, 1. There is no evidence in the case that there are any paupers chargeable upon the town; and the court will not assume that there are or even will be any such. 2. Sec. 23 of the act provides that " the board of supervisors, common council or village board of trustees may provide by ordinance or resolution for disposing of the license money in a different mode " from that stated in sec. 18. 3. If injustice results from a due administration of the law as it stands, the legislature, and not the court, is the proper source of relief.

COLE, J. The sole question in this case is, whether the power to grant licenses for the sale of intoxicating liquors within the limits of the village of Princeton is vested in the trustees of the village or in the board of supervisors of the town of Princeton. The learned counsel for the plaintiff in error contends that the power is vested in the town board, and that the circuit court was wrong in charging the jury that the town license constituted no defense to the prosecution. We are inclined to agree with him in this view of the law, and to hold that the right to grant the license belongs to the town.

The village of Princeton, as at present constituted, was incorporated by ch. 184, P. & L. Laws of 1867. That act confers upon the authorities of the village certain limited and specified powers; but among these powers the right to grant licenses for the sale of liquors within the village limits is not enumerated, nor is that power incidental to any power conferred. By the 25th section of the charter, it is declared that all the territory constituting the village of Princeton " is hereby reannexed to the town of Princeton for general municipal purposes, and it shall constitute a part of said town as fully and as perfectly, in all respects, as before the passage of said former charter, and the inhabitants of said territory shall have and enjoy the common franchises and privileges and be subject to the authority and lawful control of said town." Thus it will

be seen, except for certain special and very limited purposes, the territory constituting the village of Princeton is restored to or made a part of the town for all municipal purposes. The village has only a certain limited corporate power conferred upon it by the charter, and in all other respects it is relegated to the authority and control of the town. The authorities of the village had not the power to grant licenses; and it is a conceded fact that they never attempted to exercise the power before the passage of ch. 179, Laws of 1874. But it is claimed on the part of the prosecution, that this general law confers upon the trustees of the village that power, and that they alone can grant licenses for the sale of liquors within the village limits. The argument in support of this position is this. Sec. 1 provides that the board of supervisors of the several towns, and the aldermen of any incorporated city, and the board of trustees of any incorporated village, may grant licenses, etc.; and sec. 22 repeals all laws conflicting with the provisions of that act. The village of Princeton, it is said, is an incorporated village, and therefore the board of trustees of the village is the body upon which, by the express terms of the act, the power to grant licenses within its limits is conferred. But the counsel for the plaintiff in error has, we think, furnished a conclusive answer to this argument. He contends that, while in a certain sense the village of Princeton is an incorporated village, it is only so for very limited and specified purposes; that the village board had no power under its charter to license; and that the general law does not confer upon such board any new right or power over the subject. Besides, the law of 1874 is only a codification of the various laws relating to excise and the sale of intoxicating liquors, and, when compared with ch. 35, R. S., is seen to be little more than a reprint of that chapter. Sec. 1, which is claimed to give the right of license to the village of Princeton, is, with the exception of some immaterial verbal changes, the same as sec. 1, ch. 35, R. S. And therefore, in order to determine whether the

village of Princeton could grant licenses or not, the old statute is to be deemed as really continuing in force since its first enactment; and if the village had not the power to license before the passage of the law of 1874, it has not the power now. This view of the question, as it seems to us, is quite satisfactory and conclusive. The rule that when a repealing statute reenacts a provision of the old statute in the same words, there is no change in the law, is one well settled, and has been frequently acted upon by this court. *Fullerton v. Spring*, 3 Wis., 667; *Hurley v. The Town of Texas*, 20 id., 634; *Laude v. The C. & N. W. R'y Co.*, 33 id., 640. As the board of supervisors of the town of Princeton might confessedly grant licenses for the sale of liquors within the village of Princeton before the passage of the law of 1874, we see no ground for denying their power since that law took effect. For, so far as concerns the boards who may exercise the power, there has been no change in the law.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.